## A01A1191. SEC, INC. v. PUCKETT.
(555 SE2d 198)

RUFFIN, Judge.

Rodney Puckett sued SEC, Inc. for failure to pay overtime wages and conversion of personal property.[1] Following trial, the jury returned a verdict in favor of Puckett on both counts. SEC appeals, asserting that the trial court erred in denying its motions for directed verdict and judgment notwithstanding the verdict. For reasons that follow, we affirm in part and reverse in part.

1. Before addressing the merits of SEC's appeal, we note that, in violation of Court of Appeals Rule 27 (c) (3), the appellant failed to support most of its enumerated errors with any citations to the record or transcript. Indeed, SEC's brief includes only a single citation to the record. But for Puckett's citations and the limited size of the record, we would not consider SEC's assertions. Similarly, in violation of Court of Appeals Rule 27 (a) (1), SEC has failed to include any "statement of the method by which each enumeration of error was preserved for consideration." Such statement is essential to show the Court that the arguments raised on appeal were, in fact, properly preserved for appellate review. Appellants should not expect the Court to cull the record to ensure that this has been done.[2] By failing to cite to the portion of the record showing where it purportedly preserved the enumerated errors, SEC risked the Court deeming all its arguments abandoned.[3]

2. A trial court may grant a directed verdict or j.n.o.v. only if there is no conflict in the evidence, and "the evidence presented, with all reasonable inferences therefrom, demands a particular verdict."[4] On appeal, we view the evidence presented at trial in a light most favorable to the jury's verdict and determine whether there is any evidence to support that verdict.[5]

Viewed in this manner, the evidence shows that SEC manufactures chicken processing equipment. Prior to its incorporation in 1998, the company was a sole proprietorship owned by Lacy W. Simmons. Puckett began working for Simmons in the early 1990s as a sheet metal fabricator. According to Puckett, his job included "doing stuff for Mrs. Simmons." The plant manager, Steve Clay, regularly told Puckett and other plant employees to go to the Simmonses' home to perform such tasks as cutting grass and feeding horses. Puckett

---

[1] Puckett also sued Juanita G. Simmons, as executrix of the estate of Lacy W. Simmons, Sr., but dismissed the complaint against Simmons prior to trial.

[2] See Court of Appeals Rule 27 (c) (3) (i); *Diffley v. Marshall's at East Lake*, 227 Ga. App. 343, 345 (489 SE2d 123) (1997).

[3] See Court of Appeals Rule 27 (c) (2).

[4] *Crump v. McDonald*, 239 Ga. App. 647-648 (1) (520 SE2d 283) (1999).

[5] See id. at 648.

testified that doing work at the Simmonses' home was "most definitely" part of his job, and Clay acknowledged that when the occasion arose, he would tell the employees, " 'we need you to go to Mrs. Simmons' " and that nobody ever refused to go.

Simmons, and later SEC, paid Puckett his regular hourly wage whether he was working at the plant or at the house. Puckett testified that his employer would give him two paychecks, "one for forty hours and then one for whatever it run over." According to Puckett, in late July 1998, after SEC incorporated and acquired the company assets, SEC's chief financial officer, Dale Garner, posted a "big bulletin board from the labor board" at the plant concerning overtime wages. When Puckett read the bulletin, he inquired of Garner and Clay why he was not being paid time-and-a-half for overtime work. According to Puckett, SEC refused to pay him the overtime wage, insisting that it "didn't have to." In response to Puckett's continued complaints about his pay, SEC paid him "overtime for a couple of weeks," but then resumed paying his regular wages.

Puckett eventually quit his job at SEC because of the pay dispute. The day after he left SEC, Puckett returned to the plant to retrieve some personal items, which included metal that he personally owned and had brought to the plant to fabricate. Clay, however, confronted Puckett and told Puckett to leave or he would call the police. Puckett subsequently filed the instant suit against SEC, alleging that SEC is liable for overtime wages under the Federal Fair Labor Standards Act of 1938 ("FLSA" or "Act")[6] and also liable for conversion of his metal.

(a) SEC asserts that the trial court erred in denying its motion for a directed verdict on Puckett's claim for overtime wages because he failed to present any evidence that he was covered by the FLSA. We agree.

The FLSA requires that:

> no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.[7]

The term " '[c]ommerce' means trade, commerce, transportation, transmission, or communication among the several States or

---

[6] 29 USC § 201 et seq. (1998).
[7] 29 USC § 207 (a) (1).

between any State and any place outside thereof."[8] In its definition of an "enterprise engaged in commerce or in the production of goods for commerce," the FLSA includes an enterprise that

> (i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; *and* (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000.[9]

The foregoing sections provide two types of coverage: (1) individual employee coverage for employees engaged in commerce or in the production of goods for commerce, and (2) enterprise coverage for employees of enterprises engaged in commerce or in the production of goods for commerce.[10] Under enterprise coverage, the employee/claimant

> does not himself need to be involved in an activity that affects interstate commerce. Rather, if an enterprise meets the gross dollar volume amount, all employees are covered under the Act if some employees are (1) engaged in commerce; (2) engaged in the production of goods for commerce; or (3) engaged in handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce.[11]

A plaintiff claiming overtime wages under the FLSA has the burden of proving that he was covered under the Act and must therefore show that either he or his employer, through other employees, was sufficiently engaged in interstate commerce or the production of goods for commerce.[12]

In this case, Puckett made no such showing. Puckett merely showed that SEC manufactured chicken processing equipment. Puckett failed to present any evidence indicating that his particular

---

[8] 29 USC § 203 (b).

[9] (Emphasis supplied.) 29 USC § 203 (s) (1) (A).

[10] See *Reich v. Stewart*, 121 F3d 400, 405 (8th Cir. 1997); see also 48A AmJur2d, Labor & Labor Relations, § 3849, pp. 752-753 (1994).

[11] (Citations omitted.) *Boekemeier v. Fourth Universalist Society &c.*, 86 FSupp.2d 280, 285 (S.D. N.Y. 2000). Inasmuch as it is clear from the plain language of 29 USC § 203 (s) (1) (A) that the FLSA requires an enterprise to be engaged in interstate activity *and* meet the gross dollar volume requirement, we summarily reject Puckett's argument that he was required to prove only that SEC met one of these prerequisites to be covered by the Act. See id.

[12] See *Samson v. Apollo Resources*, 242 F3d 629, 636 (5th Cir. 2001) (ruling that "plaintiff suing under the FLSA carries the burden of proving all elements of his or her claim"); *Englert v. S. Birch & Sons Constr. Co.*, 163 F2d 34, 36-37 (9th Cir. 1947); *Boekemeier*, supra.

job, either as a metal fabricator or at the Simmonses' home, involved interstate activity or that any of SEC's other employees engaged in such conduct. Likewise, there is no evidence that, once manufactured, SEC's product, whatever its nature, was placed in interstate commerce.

Puckett nevertheless argues that, at trial, SEC essentially admitted that it was subject to the FLSA. In support of this argument, Puckett cites to the evidence that SEC posted a bulletin regarding overtime wages at the plant and the testimony of its chief financial officer showing that he was "familiar" with the FLSA. Puckett also points to testimony showing that SEC had a policy of paying time-and-a-half if an employee worked more than forty hours "on the clock" and that, after he complained about his wages, SEC paid him time-and-a-half for two weeks. Puckett argues that SEC would not have taken these actions "unless [it] believed it was subject to the Act." We disagree.

Frankly, we do not know why SEC posted the bulletin, what the bulletin said, or why SEC paid employees time-and-a-half on some occasions. This is because Puckett failed to present any evidence regarding these matters at trial. To now find that SEC took these actions because it was subject to the FLSA would require rank speculation. Likewise, we cannot discern how the chief financial officer's familiarity with the FLSA constitutes an admission that the company was subject to the Act. There are numerous reasons why a company officer may be familiar with labor laws even if the company is not subject to those laws.

Perhaps recognizing the futility of these arguments, Puckett suggests that the trial court could have taken judicial notice "that Georgia is a national leader in the processing of chicken for interstate shipment, and that the equipment manufactured by SEC and used for chicken processing affected interstate commerce." Under Georgia law, courts may take judicial notice of "matters of public knowledge . . . without the introduction of proof."[13] The rule permits courts to judicially notice "that which is within the knowledge of most men. The test is (1) whether the fact is one of common, everyday knowledge that all men of average intelligence are presumed to know, and (2) whether it is certain and indisputable."[14]

Although Georgia may have a substantial chicken industry, we are not prepared to rule, based solely on the ipse dixit of counsel, that it is undisputable and known to most of our citizens that we are a

---

[13] OCGA § 24-1-4.

[14] (Punctuation omitted.) *Cole v. Cates*, 110 Ga. App. 820, 823 (1) (c) (140 SE2d 36) (1964). See also *Graves v. State*, 269 Ga. 772, 774 (2) (504 SE2d 679) (1998) (courts may judicially notice "matters [of] which the general public has common knowledge"), overruled in part on other grounds, *Jones v. State*, 272 Ga. 900, 903 (2) (537 SE2d 80) (2000).

national leader in processing chicken for interstate commerce. Moreover, because the trial court was left uninformed as to the nature of the chicken processing equipment SEC manufactured or where that equipment was sold, it is impossible to conclude that SEC's particular equipment was used in interstate commerce. Finally, even if this were a fact which was properly the subject of judicial notice, Puckett has not shown that he requested the trial court to take such notice, that the trial court entertained such a request, or that the parties had an opportunity to be heard on the matter.[15] Under these circumstances, we find no merit in this argument.

Finally, Puckett argues that SEC waived the issue of whether he was covered by the FLSA because it did not raise it in the consolidated pretrial order. Again, we disagree.

The pretrial order reflects Puckett's contention that SEC "violated the [FLSA] by failing to pay overtime to [him]" and that the jury needed to determine whether SEC "violated the FLSA by failing to pay overtime to [him]." It is clear from the pretrial order that Puckett's claim for overtime wages was based solely on SEC's alleged violation of the FLSA. As stated above, there is absolutely no indication that SEC admitted that Puckett was covered under the FLSA. Because it is clear that a plaintiff claiming overtime wages under the Act must prove coverage as part of his claim,[16] we find no merit in Puckett's contention that the issue was waived.

It is thus apparent that Puckett failed to present any evidence showing that he or SEC was engaged in commerce or in the production of goods for commerce and the trial court erred in failing to grant SEC a directed verdict on Puckett's claim for overtime wages under the FLSA.

(b) We do not find, however, that the trial court erred in denying SEC's motions for directed verdict and j.n.o.v. on Puckett's conversion claim. Our review of the transcript does not disclose that SEC raised this issue when it moved for a directed verdict, and even if SEC did raise the matter, as stated above, it failed to show in its appellate brief where it preserved the question for appellate review. Under these circumstances, SEC has waived any alleged error.[17]

*Judgment affirmed in part and reversed in part. Johnson, P. J., concurs. Ellington, J., concurs in the judgment only.*

---

[15] See *Graves*, supra at 775-776 (ruling that notice and opportunity to be heard are required before court may judicially notice adjudicative fact).

[16] See *Boekemeier*, supra.

[17] See *College Park Cabs v. Justus*, 227 Ga. App. 66, 70 (4) (488 SE2d 88) (1997); *Diffley*, supra.

DECIDED OCTOBER 11, 2001 —
RECONSIDERATION DENIED NOVEMBER 15, 2001 — 

*Donald R. Donovan*, for appellant.
*Mason B. Rountree*, for appellee.