A02A0119. BACA v. BACA.
(568 SE2d 746)

RUFFIN, Judge.

Rossana Baca filed a petition seeking relief from family violence, alleging that her husband, Jesus Baca, was abusive. Following a hearing, the trial court found in favor of Mrs. Baca and entered a six-month temporary protective order pursuant to the Georgia Family Violence Act.[1] In eight enumerations of error, Mr. Baca challenges the protective order. For reasons that follow, we affirm.

In her petition, Mrs. Baca alleged that Mr. Baca has a history of physical and verbal abuse. Specifically, she averred that her husband had accused her of stealing money, threatened her, and kicked her in the leg. Mr. Baca responded, denying the allegations of abuse and accusing his wife of misconduct, including, among other things, alcoholism, drug abuse, theft, perjury, and violence.

During the hearing on the petition, the parties presented evidence supporting their various allegations. Mrs. Baca testified that, on June 16, 2001, her husband accused her of stealing $1,000 from his briefcase. When she denied the charge, he kicked her in the leg, causing a bruise, and threatened to kill her. Mrs. Baca tendered a picture of the bruise in evidence. Mrs. Baca also claimed that her husband had been an alcoholic and had used cocaine in the past.

---

[1] OCGA § 19-13-1 et seq.

Mr. Baca took the stand and denied the allegations. According to Mr. Baca, his wife was the one with a drug and alcohol problem. Mr. Baca testified that, on one occasion, his wife had pointed a shotgun at him and their two children. Mr. Baca also stated that his wife had a history of stealing and had recently converted one of his credit cards to her own use.

Following the hearing, the trial court found in favor of Mrs. Baca and entered a six-month protective order. In its order, the trial court (1) prohibited the husband from contacting his wife; (2) awarded the wife temporary custody of the couple's two children; (3) ordered the husband to pay temporary child support; (4) awarded the wife exclusive possession of the family residence; and (5) designated those items the husband was permitted to take from the house.

On appeal, Mr. Baca contends that the trial court erred in several evidentiary rulings. Specifically, Mr. Baca asserts that the trial court erred in finding that: (1) evidence of Mrs. Baca's violence was irrelevant; (2) evidence of Mrs. Baca's drug use was irrelevant; and (3) evidence that Mrs. Baca had previously made false allegations against her husband was irrelevant. Mr. Baca also argues that the trial court erred in failing to consider him as a candidate for an award of temporary custody. In a related enumeration of error, Mr. Baca asserts that the trial court erred in failing to inquire into its own jurisdiction under the Uniform Child Custody Jurisdiction Act (UCCJA) prior to entering a custody award. In two enumerations of error, Mr. Baca maintains that the trial court improperly rendered judgment based upon an ex parte submission. Finally, Mr. Baca contends that the trial court erred in awarding excessive child support.

1. As a threshold matter, we must address our jurisdiction to entertain this appeal. The trial court entered the six-month protective order on June 27, 2001, and it expired on December 27, 2001. Thus, the issues raised arguably are moot, and "mootness is a mandatory ground for dismissal."[2] However, if "an issue . . . is capable of repetition yet evades review," we do not view that issue as moot.[3] This is true for "those matters in which there is 'intrinsically insufficient time to obtain judicial relief for a claim common to an existing class of sufferers.' "[4] This case involves a six-month protective order, which is the maximum length of time such order may remain in effect.[5] Given the time constraints of appellate courts, it often is not feasible to reach the merits of this type of appeal during

---

[2] *Collins v. Lombard Corp.*, 270 Ga. 120, 121 (1) (508 SE2d 653) (1998).
[3] Id. at 122.
[4] Id.
[5] See OCGA § 19-13-4 (c).

the six-month window.[6] Accordingly, we must address whether the various issues are common to an existing class, yet tend to evade review.

As an initial matter, we find that the evidentiary issues are moot. In the three enumerations involving evidentiary complaints, Mr. Baca contends that the trial court erred in concluding that certain evidence was irrelevant. These evidentiary rulings were germane only to the temporary order, which has expired. There is no reason to suppose another court would rule the same way in a subsequent proceeding.[7] Thus, the evidentiary issues are not capable of repetition, and the expiration of the protective order renders them moot.[8]

Similarly, we find the enumerations of error relating to an alleged ex parte submission moot. At the crux of Mr. Baca's argument is his contention that his attorney and opposing counsel were supposed to confer over which personal items Mr. Baca would be permitted to retrieve from the family house. Mr. Baca contends that opposing counsel submitted an incomplete list of personalty to the trial judge without first obtaining the signature or permission of his attorney. In a related enumeration of error, Mr. Baca contends the trial court erred in failing to correct this discrepancy. Again, the order has expired and no longer governs Mr. Baca's entitlement to property. Thus, this issue is moot.[9]

Nonetheless, we find the remaining issues are not moot given that they involve issues that both affect an existing class of sufferers and tend to evade review.[10]

2. Mr. Baca contends that the trial court erred in failing to consider him as a candidate for an award of temporary custody. Mr. Baca cites OCGA § 19-9-3 (a) (3) (A) for the proposition that, in resolving custody issues, a child's safety and well-being are the primary concerns. Implicit in Mr. Baca's argument is the assertion that the trial court did not address the children's best interests.

We are unaware of any case specifically addressing the standard for an award of temporary custody in connection with a protective order. Accordingly, we take the opportunity to clarify this issue on appeal. We agree with Mr. Baca that any award of temporary custody

---

[6] Indeed, this appeal was calendared to be decided during the January 2002 term.

[7] We further note that the temporary protective order was issued by a magistrate judge acting pro hac vice. Accordingly, it is unlikely that this judge would be required to adjudicate any future disputes between the Bacas.

[8] See *In the Interest of J. E. H.*, 205 Ga. App. 847 (424 SE2d 61) (1992).

[9] See *Massey v. Ga. Bd. of Pardons & Paroles*, 275 Ga. 127 (1) (562 SE2d 172) (2002).

[10] See *Collins*, supra.

should be predicated on the best interest of the child.[11] Nonetheless, we find no basis for reversal.

At the crux of Mr. Baca's complaint is the fact that the trial court neglected to include findings of fact regarding the children's best interests in its award. According to Mr. Baca, the absence of such findings shows the trial court did not consider the issue. We disagree.

During the hearing, Mr. Baca expressly stated his desire to retain custody of his children while the protective order was in effect. The trial court, nonetheless, awarded temporary custody to Mrs. Baca. Implicit in the trial court's ruling is a finding that such award would be in the best interests of the children. In making such ruling, the trial court retains broad discretion, and we will not interfere with its discretion absent abuse.[12] We find no abuse here.

It is readily apparent upon reviewing the briefs of the parties and the transcript from the hearing that the Bacas have had a tumultuous relationship. Both Mr. and Mrs. Baca accused the other of egregious conduct, and the trial court was responsible for choosing which party to believe. Here, the trial court clearly was swayed by the photograph of Mrs. Baca's leg, which showed the bruise. Given this evidence of physical violence against Mrs. Baca, the trial court ruled in her favor.

> It is not our function to second-guess the trial court in cases such as this, which turn largely on questions of credibility and judgments as to the welfare of the child. The trial court is in the best position to make determinations on these issues, and we will not overrule its judgment if there is any reasonable evidence to support it.[13]

The trial court clearly found Mrs. Baca to be the more credible witness, and we will not gainsay that finding on appeal. Given the evidence — albeit conflicting — that Mr. Baca was abusive toward his wife, we cannot say that the trial court erred in concluding that it was in the best interests of the children to remain with Mrs. Baca.[14]

---

[11] See, e.g., *Watkins v. Watkins*, 266 Ga. 269, 273 (3) (466 SE2d 860) (1996) (court's authority to award temporary custody in emergency situation if award is in child's best interest); *Adams v. State*, 218 Ga. 130, 131 (126 SE2d 624) (1962) (in a decree awarding temporary custody, "[t]he best interest[ ] of the child . . . [is] the basis for the award").

[12] See *Urquhart v. Urquhart*, 272 Ga. 548, 549 (2) (533 SE2d 80) (2000).

[13] (Citation and punctuation omitted.) *Lewis v. Lewis*, 252 Ga. App. 539, 543 (2) (557 SE2d 40) (2001).

[14] To the extent that Mr. Baca contends that the trial court erred in excluding evidence of Mrs. Baca's unfitness as irrelevant, we find no such error. Initially, we note that Mr. Baca was permitted to introduce substantial evidence regarding his wife's alleged unfitness, including her alleged violence, thievery, and substance abuse. At one point, however, the trial court prevented Mr. Baca from questioning Mrs. Baca regarding her drug use, conclud-

The fact that the trial court did not include specific findings of fact in its order regarding the best interests of the children does not alter this result. Mrs. Baca filed a motion seeking temporary custody. Thus, the trial court was not required to include findings of fact or conclusions of law in its order.[15] Although the better practice may be to include such findings, we will not simply presume the trial court misapprehended the law unless the record clearly reflects such misapprehension.[16]

3. Mr. Baca also asserts that the trial court erred in concluding that an "abated divorce proceeding . . . in Fort Bend County, Texas, was irrelevant to the award of temporary custody." Specifically, he argues that the trial court erred in failing to inquire into its own jurisdiction under the UCCJA.[17] As we have not had an opportunity to address the interplay between the UCCJA and the Family Violence Act, we take the opportunity to do so.

OCGA § 19-9-46 (a) (2000) provides that

[a] court of this state shall not exercise its jurisdiction under [the UCCJA] if at the time of filing the petition a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction substantially in conformity with [the UCCJA], unless the proceeding is stayed by the court of the other state because this state is a more appropriate forum or for other reasons.

According to Mr. Baca, the trial court should have directed an inquiry under the UCCJA upon learning that there was an abated divorce proceeding in Fort Bend County, Texas. Again, we disagree.

Under the express language of the UCCJA, a court is required to conduct an inquiry only when a similar petition is "pending" in the court of another state. As Mr. Baca acknowledges, the Texas action was abated because of an earlier divorce petition filed in Mexico in 1996.[18] According to Black's Law Dictionary, "[a]s used in reference to actions at law, [the] word abate means that [the] action is utterly

---

ing that such questioning was irrelevant to the issue of whether he had committed an act of violence. Mr. Baca said the evidence went to Mrs. Baca's "credibility," but did not raise the issue of parental unfitness. Accordingly, any alleged error is waived. See *Luxenberg v. Griffith*, 237 Ga. App. 201, 202 (1) (514 SE2d 63) (1999).

[15] See *Wilbanks v. Wilbanks*, 238 Ga. 660-661 (1) (234 SE2d 915) (1977).

[16] See *Green v. Krebs*, 245 Ga. App. 756-757 (1) (538 SE2d 832) (2000).

[17] OCGA § 19-9-40 et seq. (2000).

[18] In his brief, Mr. Baca does not argue that the divorce action in Mexico remains pending. In fact, the evidence demonstrates that, at the time of the hearing, a third divorce petition had been filed in Georgia.

dead and cannot be revived except by commencing a new action."[19] Thus, contrary to Mr. Baca's contention on appeal, there was no action pending in Texas, and the UCCJA does not apply.

Moreover, requiring a court to inquire into its jurisdiction prior to addressing an allegation of family violence could dangerously delay the court in providing the relief sought. Indeed, the legislature has recognized this reality and amended the UCCJA accordingly. As of July 2001, the UCCJA provides for temporary emergency jurisdiction in this State if such jurisdiction "is necessary in an emergency to protect the child because *the child or a sibling or parent of the child* is subjected to or threatened with mistreatment or abuse."[20] Accordingly, Baca's underlying assertion that a trial court must inquire into its jurisdiction under the UCCJA prior to addressing an allegation of family violence is not well founded.

4. Finally, Mr. Baca argues the trial court erred in awarding excessive child support. Again, we have not had an opportunity to address the award of temporary child support in connection with a protective order. Thus, we take this opportunity to also address Mr. Baca's assertion on appeal.

OCGA § 19-13-4 specifically authorizes a trial court to award temporary child support "as required by law."[21] Mr. Baca suggests that his child support payments should be calculated in accordance with OCGA § 19-6-15 (b). However, Mr. Baca's argument is flawed. OCGA § 19-6-15 applies only to final verdicts or decrees, and this case involves a temporary protective order. Mr. Baca provides no authority for the proposition that a trial court must engage in the detailed calculation set forth in OCGA § 19-6-15 prior to awarding temporary child support. Indeed, OCGA § 19-6-14, which pertains to an award of temporary support pending a final divorce, does not contain such method for calculating support, but merely states that the trial court "may grant as alimony a sum sufficient for the support of the children of the parties.".

To the extent Mr. Baca contends that the amount awarded is grossly disproportionate to his income, the record does not support his contention. According to Mr. Baca, his entire monthly income is less than $5,000 per month — the amount awarded as support by the trial court. The record, however, shows that Mr. Baca earns approximately $3,000 per month "free and clear" from his job at a car dealership. In addition, Mr. Baca owns two businesses. There was evidence that Mr. Baca received a salary of $72,000 per year from one business. And the

---

[19] Black's Law Dictionary (4th ed. 1968), p. 16.
[20] (Emphasis supplied.) OCGA § 19-9-64 (a).
[21] See OCGA § 19-13-4 (a) (6).

other company brought in approximately $8,000 per week.[22] It follows that this claim of error presents no basis for reversal.[23]

*Judgment affirmed. Pope, P. J., and Barnes, J., concur.*

DECIDED JUNE 25, 2002 —
RECONSIDERATION DENIED JULY 16, 2002

*Paul S. Weiner*, for appellant.
*Renata D. Turner*, for appellee.

---

[22] On appeal, Mr. Baca asserts that this Court can take "judicial notice" that he grosses only three to five percent or, at most, $1,450 per month from the $8,000 per week brought in by one of his businesses, a check-cashing company. Courts may "judicially notice that which is within the knowledge of most men. The test is (1) whether the fact is one of common, everyday knowledge that all men of average intelligence are presumed to know, and (2) whether it is certain and indisputable." (Punctuation omitted.) *SEC, Inc. v. Puckett*, 252 Ga. App. 422, 425 (2) (a) (555 SE2d 198) (2001) (physical precedent only). The profit margin of check-cashing companies does not meet either criterion.

[23] See, e.g., *Nolan v. Nolan*, 179 Ga. 677 (177 SE 248 ) (1934) (where evidence conflicts in action for temporary alimony, trial court may award such amount "as seems reasonable and appropriate").