A11A1355. BIRCHBY v. CARBOY.
(716 SE2d 592)

DOYLE, Judge.

Jaimie Carboy filed a petition for a temporary family violence protective order against George Birchby pursuant to the Family Violence Act.[1] The trial court granted the petition and entered a 12-month family violence protective order. Following the denial of his motion for new trial, Birchby filed an application for discretionary appeal, which this Court granted.[2] On appeal, Birchby argues that the trial court erred by (1) entering a final judgment that did not conform to its verbal ruling; (2) failing to make specific written findings of fact and conclusions of law in the final order; (3) auth-

---

[1] OCGA § 19-13-1 et seq.

[2] "[O]rders entered under the Family Violence Act must come by discretionary application and that jurisdiction lies in the Court of Appeals of Georgia." *Schmidt v. Schmidt*, 270 Ga. 461 (510 SE2d 810) (1999).

orizing Carboy's attorney to decide the child support amount set forth in the order; (4) concluding that it had no authority to withhold the transmission of the final order to the Georgia Protective Order Registry;[3] (5) failing to consider the parties' pending divorce action; (6) denying Birchby's request to reopen the evidence; and (7) denying Birchby's motion for new trial. We affirm, for reasons that follow.

Carboy filed a petition for a temporary family violence protective order pursuant to OCGA § 19-13-1 et seq., alleging that Birchby, her husband, kicked her in the ribs, pushed her, and intimidated her with his gun. Carboy sought temporary custody of their child, exclusive use and possession of the family residence, and child support, as well as a protective order enjoining Birchby from having contact with her or their child.

At the conclusion of a three-day hearing,[4] the trial court gave a lengthy verbal ruling, stating therein that it had "serious concerns about the credibility of both parties based upon the evidence," and noted that Carboy "may have been the instigator." Nevertheless, the trial court concluded that "this is a family violence petition[,] and [Carboy] has proven . . . by a preponderance of the evidence that an incident occurred that constitutes family violence under the law. . . . [T]he action of kicking [Carboy] in the chest constituted an act of family violence." After describing the terms of the order, the trial court directed counsel for Carboy to prepare the order, noting that it would consider any objections or response thereto from counsel for Birchby. The subsequent "Family Violence Twelve Month Protective Order" ordered that Birchby "shall not contact, communicate, or come about [Carboy's] residence or place of employment, or come within 500 yards of her except as may be necessary with regard to visitation or discussions regarding the[ir] child"; awarded Carboy exclusive use of the residence; awarded temporary child support; and prohibited Birchby from possessing a firearm. Birchby subsequently filed motions to reopen the evidence, for reconsideration, and for a new trial. Following a hearing, the trial court denied Birchby's motions, and this appeal followed.

1. At the outset, we note that Birchby's brief fails to comply with Court of Appeals Rule 25 (c) (1), which requires that "[t]he sequence of arguments in the briefs shall follow the order of the enumeration of errors, and shall be numbered accordingly." Birchby enumerates seven separate errors, but he groups enumerations 1, 2, and 3 in

---

[3] See OCGA §§ 19-13-52; 19-13-53.

[4] The full transcript was 624 pages. Birchby elected to include in the appellate record only that portion of the transcript depicting the trial court's ruling.

one argument, 4 and 5 in another, and 6 and 7 in a third argument.

> As we have held, Rule 25 (c) (1) is more than a mere formality. It is a requirement which this Court imposes to ensure that all enumerations of error are addressed and to facilitate review of each enumeration. By failing to comply with the rule, [Birchby] has hindered the Court's review of his assertions and has risked the possibility that certain enumerations will not be addressed. Accordingly, to the extent that we are able to discern which of the enumerations are supported in the brief by citation of authority or argument, we will address those enumerations.[5]

Birchby also failed to comply with Court of Appeals Rule 25 (a) (1), which requires "a statement of the method by which each enumeration of error was preserved for consideration."

2. Next, "we must address our jurisdiction to entertain this appeal."[6] The trial court entered the 12-month protective order on July 27, 2010, and it therefore expired on July 27, 2011.

> Thus, the issues raised arguably are moot, and mootness is a mandatory ground for dismissal. However, if an issue is capable of repetition yet evades review, we do not view that issue as moot. This is true for those matters in which there is intrinsically insufficient time to obtain judicial relief for a claim common to an existing class of sufferers.[7]

This case involves a 12-month protective order. "Given the time constraints of appellate courts," orders in effect for 12 months often expire before an appellate decision is issued.[8] "Accordingly, we must address whether the various issues are common to an existing class, yet tend to evade review."[9]

We conclude that Birchby's enumerations regarding the trial court's failure to reopen the evidence, its failure to consider the pending divorce action, and its denial of his motion for new trial are evidentiary issues, "and the expiration of the protective order renders them moot."[10] Birchby's remaining enumerations are not

---

[5] (Punctuation omitted.) *Barnett v. Fullard*, 306 Ga. App. 148, 149-150 (1) (701 SE2d 608) (2010).

[6] *Baca v. Baca*, 256 Ga. App. 514, 515 (1) (568 SE2d 746) (2002).

[7] (Punctuation and footnotes omitted.) Id.

[8] Id.

[9] Id. at 516 (1).

[10] Id.

moot because "they involve issues that both affect an existing class of sufferers and tend to evade review," and we will therefore address them.[11]

3. Birchby argues that the trial court erred by entering a judgment — prepared by Carboy's counsel — that does not conform to the court's verdict. Specifically, Birchby contends that the judgment "fails miserably to incorporate the [trial c]ourt's findings of fact and conclusions of law delivered orally from the bench." This argument is without merit.

> A trial court's oral pronouncement is not a judgment until it is put in writing and entered as the judgment. Although a trial court's oral pronouncements on the record may provide insight on the intent of its subsequent written judgment, discrepancies between the two pronouncements must be resolved in favor of the written judgment. Thus, the trial court's oral statements on the record were not binding.[12]

4. Birchby contends that the trial court erred by failing to include specific conclusions of law and findings of fact in its written order. OCGA § 19-13-4, which sets forth the requirements for the contents of a family violence protective order, does not require that such orders include written findings of fact and conclusions of law. Moreover, our Supreme Court has held that a trial court is "not required to enter findings of fact and conclusions of law in awarding temporary alimony, child support and child custody."[13]

5. Birchby argues that the trial court erred by authorizing Carboy's attorney to decide the amount of the child support award. The record belies this assertion.

At the hearing, the trial court stated that it intended to "award child support calculated based upon [Birchby's] income as shown on his financial affidavit and imputing income to [Carboy] at minimum wage, whatever that will be, with no deviations for one child." The court then directed Carboy's attorney to prepare a proposed order and directed him to send a copy to counsel for Birchby so that he could assert any objections he had thereto, which the trial court would then consider.[14]

The order in this case indicates on its face that it is a standardized form order promulgated pursuant to OCGA § 19-13-53, and it

---

[11] Id.

[12] (Punctuation omitted.) *Blair v. Bishop*, 290 Ga. App. 721, 725 (2) (660 SE2d 35) (2008).

[13] *Wilbanks v. Wilbanks*, 238 Ga. 660, 661 (1) (234 SE2d 915) (1977). See also *Baca*, 256 Ga. App. at 518 (2).

[14] The record does not indicate whether Birchby objected to Carboy's proposed order.

directs the trial court to initial in the space provided to order a specific provision, and it states that "[t]he court should delete or otherwise make inoperative any provision in the standardized form which is not supported by the evidence in the case and in order to comply with the court's application of the law and facts to an individual case." The order contains the trial court's initials, as well as handwritten language and deletions apparently made by the trial court. Finally, the child support worksheet, presumably prepared by Carboy's counsel, contains the same child support figure awarded in the order. Thus, Birchby's arguments that he was not afforded an opportunity to provide input as to the amount of the child support and that the trial court abdicated its responsibility to decide the amount of the award to counsel for Carboy are without merit and unsupported by the record. Under these circumstances, we find no basis for reversal.

> Even in full adversarial proceedings in the courts of the land, the practice persists of allowing a prevailing party's counsel to aid the court, as a matter of expediency, in drafting findings of fact and conclusions of law to support a decision already reached and announced. While tolerated, such a practice is not favored. However, the Supreme Court of the United States has held that even in cases where the judge adopts the findings of an advocate verbatim, such findings, though not the product of the workings of the judge's mind, are formally his; they are not to be rejected out-of-hand, and they will stand if supported by evidence. It is the judgment rendered and its legal effect, and not the reasons and arguments in support thereof expressed by the judge in his order or judgment, which constitutes the adjudication.[15]

6. Finally, Birchby argues that the trial court erred by concluding that it had no authority to direct the clerk of court to withhold transmission of the family violence protective order to the Georgia Protective Order Registry. We disagree.

At the hearing, the trial court verbally stated that

> I'm concerned that a family violence order will stigmatize the respondent beyond that which is necessary and appropriate under the circumstances[,] given the short window of

---

[15] (Citation and punctuation omitted.) *North Fulton Community Hosp. v. State Health Planning &c.*, 168 Ga. App. 801, 810 (3) (310 SE2d 764) (1983), citing *United States v. El Paso Natural Gas Co.*, 376 U. S. 651, 656 (84 SC 1044, 12 LE2d 12) (1964).

time and the incident that occurred. . . . I do not believe it is necessary or appropriate to transmit the order to the registry. If that's required by operation of law I can't stop it, but if I have the discretion it ain't going to happen in this case because I don't think it's appropriate under the circumstances of this case.

Ultimately concluding that transmission to the Registry was required,[16] the trial court handwrote on the order: "The Court has expressed the concern that transmission of this order to the Registry is neither necessary nor appropriate, but under current law, the Clerk must transmit the order nonetheless." The trial court is correct.

OCGA § 19-13-52 (a) provides:

> The Georgia Protective Order Registry shall be created to serve as a centralized data base for state-wide protective orders issued pursuant to Code Sections 16-5-90 through 16-5-94 and this chapter. The registry is intended to enhance victim safety by providing law enforcement officers, prosecuting attorneys, and the courts access to protective orders issued by the courts of this state and foreign courts 24 hours of the day and seven days of the week. Access to the registry is intended to aid law enforcement officers, prosecuting attorneys, and the courts in the enforcement of protective orders and the protection to victims of stalking and family violence.

Pursuant to OCGA § 19-13-53 (b), "[t]he clerk of the issuing court *shall* electronically transmit a copy of the protective order or modification thereof to the registry as expeditiously as possible but no later than by the end of the next business day after the order is filed with the clerk of court."[17] Because "shall is a word of command, it can hardly be argued that the [transmission is] optional."[18]

Birchby also argues that the trial court erred by concluding that it did not have discretion to convert Carboy's family violence petition into a civil restraining order in the parties' divorce complaint, which did not require transmission to the Georgia Protective Order Registry. This argument is without merit.

---

[16] Following the hearing, the trial court sent a letter to counsel concluding that it did not have the authority to direct the clerk to withhold transmission of the protective order to the Registry, but inviting Birchby's counsel to submit any authority on the issue.

[17] (Emphasis supplied.)

[18] *McClure v. Davidson*, 258 Ga. 706, 710 (3) (373 SE2d 617) (1988).

Carboy elected to file a petition for a temporary protective order against Birchby pursuant to the Family Violence Act; she never withdrew her petition, nor did she consent to the trial court converting the family violence protective order to a civil restraining order. Following the hearing, the trial court concluded that Carboy proved by a preponderance of the evidence that Birchby committed "an act that constitutes family violence under the law." Given the mandatory language of the Act, it is clear that the legislature intended that all family violence protective orders be transmitted to the Registry, without exception. To permit a trial court to convert, without the consent of the petitioner, a petition for a family violence protective order to a civil restraining order that does not require transmission to the Registry would circumvent the clear intention of the legislature, a result that we will not countenance.[19]

*Judgment affirmed. Ellington, C. J., and Miller, P. J., concur.*

DECIDED AUGUST 29, 2011.

*McDonald, Cody & Cook, Douglas W. McDonald, Sr.*, for appellant.

*English, Tunkle & Smith, Richard D. Tunkle*, for appellee.

---

[19] See *Ga. Public Svc. Comm. v. ALLTEL Ga. Communications Corp.*, 227 Ga. App. 382, 387 (2) (489 SE2d 350) (1997) ("We are not prone to condone the intentional or inadvertent but flagrant circumvention of the clear legislative purpose of protective statutes.") (punctuation omitted).