**THIRD DIVISION**
**ELLINGTON, P. J.,**
**BETHEL and GOBEIL, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**September 20, 2018**

# In the Court of Appeals of Georgia

A18A0914. WILDES v. CLARK.

ELLINGTON, Presiding Judge.

On August 17, 2017, the Superior Court of Floyd County granted Melissa Clark's petition for a family violence twelve-month protective order against her husband, Andrew Wildes. We granted Wildes's application for a discretionary appeal from the protective order. Wildes contends, inter alia, that the trial court abused its discretion in conducting a hearing on Clark's motion when he was without the benefit of his retained counsel.[1] For the reasons explained below, we find that the trial court

---

[1] Wildes also asserts that the trial court erred in discounting his attorney's conflict notice, in denying a requested continuance, in interfering in his cross-examination of Clark, in discouraging him from testifying and otherwise preventing him from presenting evidence, and in granting Clark's petition for a twelve-month protective order.

abused its discretion, and, therefore, we reverse.[2]

The record shows that Clark filed her petition on August 7, 2017. The trial court entered an ex parte protective order that day, scheduled the hearing on Clark's petition for 9:00 a.m. on August 17, 2017, and ordered that the ex parte order be served on Wildes. Wildes retained counsel, but his counsel had a conflict on the scheduled hearing date. Therefore, on August 16, the day before the hearing, the parties submitted a joint request that the hearing be continued to August 31, a date Wildes asserts was provided by the judge's office.[3] The August 31 date was also

---

[2]    The grant or denial of a motion for a protective order generally lies within the sound discretion of the trial court. We therefore will not reverse absent an abuse of discretion. The trial court is in the best position to make determinations on these issues, and we will not overrule its judgment if there is any reasonable evidence to support it.

(Citation and punctuation omitted.) *Perlman v. Perlman*, 318 Ga. App. 731, 733 (2) (734 SE2d 560) (2012).

[3] No document in the appellate record memorializes this communication regarding scheduling. Pursuant to Court of Appeals Rule 25 (b) (1), however, we accept Wildes's assertion as being prima facie true. That Rule provides:

Part One [of appellee's brief] shall point out any material inaccuracy or incompleteness of appellant's statement of facts and any additional statement of facts deemed necessary, plus citations to additional parts of the record or transcript deemed material. Failure to do so shall constitute consent to a decision based on the appellant's statement of facts. Except

2

within the 30-day period during which the court must conduct a hearing.[4] The trial court denied the consent request for a continuance on the afternoon of August 16. Immediately before the hearing was scheduled to begin on August 17, Wildes filed in the clerk's office his attorney's entry of appearance, a special appearance challenging the sufficiency of service of process, and a conflict notice for the scheduled hearing. He also provided service copies of these pleadings to Clark's attorney by hand delivery before the hearing.

The trial judge called the case at 10:04 a.m. on August 17. Clark and her

---

as controverted, appellant's statement of facts may be accepted by this Court as true.

Clark failed to file a responsive brief in this appeal, and we therefore accept Wildes's representation of the facts as being prima facie true. *Daniel v. Allstate Ins. Co.*, 290 Ga. App. 898, 900 (1) (660 SE2d 765) (2008); *Southern Gen. Ins. Co. v. Davis*, 205 Ga. App. 274, 275-276 (421 SE2d 780) (1992).

[4] The process for obtaining a family violence protective order is set forth in the Family Violence Act, OCGA § 19-13-1 et seq. Once a proper petition has been filed, the Act requires the trial court to hold a hearing within 30 days after the filing of the petition, at which the petitioner must prove the allegations of the petition by a preponderance of the evidence as in other civil cases. OCGA § 19-13-3 (c).

Although the 30-day deadline cannot be ignored, it can be extended under certain circumstances. OCGA § 19-13-3 (c) ("If a hearing is not held within 30 days, the petition shall stand dismissed *unless the parties otherwise agree*.") (emphasis supplied); *Foster v. Gidewon*, 280 Ga. 21, 22-23 (1) (622 SE2d 357) (2005).

3

attorney were present, as was Wildes. When the judge inquired about the location of Wildes's attorney, Clark's attorney stated that he had heard from Wildes's attorney and he anticipated arriving at 11:30 a.m. He also showed the service copies to the judge. The judge refused to "recognize" Wildes's attorney's entry of appearance and conflict notice, stating that they were "too late" and that "apparently, [Wildes does not] have a lawyer this morning," so the court was "proceeding as if he had no lawyer." The judge directed Wildes to sit at counsel table.

Clark testified under oath. After five questions by Clark's attorney about Wildes's abusive conduct, the judge stated, "That's enough, I don't need to hear any more." After directing Clark's counsel to maintain his position at the lectern, saying, "let's block" Clark's and Wildes's views of each other, the judge directed Wildes to tell her any questions he had for Clark, saying, "I'm not going to let you question her directly." As Wildes posed questions, the judge would "rephrase [the questions] in a way that's more appropriate." The judge relayed one question, stated that it "technically" called for hearsay "but I'm going to go ahead," and allowed Clark to answer. With regard to another question, the judge sua sponte raised (and sustained) an "asked and answered" objection and demanded the next question. After Wildes posed one question, the judge declined to put it to Clark, saying, "she can explain

that, but I already know the answer," declaring the question both asked-and-answered and irrelevant, and added, "I think we've put her through enough, actually." The judge rejected or interrupted many of Wildes's remaining questions as irrelevant or argumentative and finally cut off the examination, saying, "I don't need to hear any more testimony," and told Clark to step down.

The judge then advised Wildes that he was not required to testify, because Clark's testimony could provide the basis for criminal charges. Wildes made "a continuous objection to being subjected to [the] proceeding [that day] without [his] representation." The judge questioned why Wildes would even contest Clark's petition, given that he had relocated to Florida and that, in her opinion, a protective order was of such little legal significance that "later on down the road" no one would care that the order had been entered against him. The judge mused, "maybe it's just in your personality that you need to contest this." Wildes explained his reasons for objecting to the petition.[5] The judge commented that the only purpose of some of

---

[5] One of Wildes's concerns was that the entry of the order would exist on the record and could be discovered by potential employers. The judge responded that family violence proceedings are civil in nature and are not placed on the Georgia Crime Information Center report that is available to employers. Under the Family Violence Act, the Georgia Crime Information Center maintains the Georgia Protective Order Registry. OCGA § 19-13-52. Every family violence protective order must be transmitted to the Registry, without exception. *Birchby v. Carboy*, 311 Ga.

Wildes's questions seemed to be to "distress" Clark, adding "I'm not going to put up with it. I'm just going to enter the order." The judge then granted Clark's petition and ordered Wildes to have no form of contact with Clark.

The record shows that the trial court refused to honor Wildes's attorney's conflict letter and request to continue the hearing for just two weeks, even though Clark had consented to the delay and even though the requested hearing date would have been within 30 days after Clark filed her petition, as required. The record also shows that the trial court refused to wait 90 minutes so that Wildes could be represented by counsel, forcing him to proceed pro se. The court exacerbated this situation by actively interfering with Wildes's attempt to represent himself, apparently out of sympathy for Clark's emotional distress during the hearing. In addition, the record shows that Wildes had left the family home before Clark filed her

App. 538, 544 (6) (716 SE2d 592) (2011). "Access to the registry is intended to aid law enforcement officers, prosecuting attorneys, and the courts in the enforcement of protective orders and the protection to victims." OCGA § 19-13-52 (a). "Any individual, agency, or court which obtains information from the registry shall keep such information or parts thereof confidential, and shall not disseminate or disclose such information, or parts thereof, except as authorized in this article or otherwise by law. Violation of this Code section shall be a misdemeanor." OCGA § 19-13-55.

6

petition and had stayed away from her.[6] Based on all of the foregoing and our review of the record, we conclude that there was no evidence that would support a conclusion that Clark's substantive rights would have been prejudiced by the short delay requested or that other extenuating circumstances required proceeding without any delay. Given these facts, the trial court abused its discretion in conducting a hearing on Clark's petition without affording Wildes a meaningful opportunity to be heard and to present a defense. *Foster v. Gidewon*, 280 Ga. 21, 22-23 (1) (622 SE2d 357) (2005) (reversing a family violence protective order where the trial court failed to honor the respondent's attorney's conflict letter and where there was "no evidence that [the petitioner's] substantive rights would have been prejudiced by a short delay, that [the petitioner] would have been placed in any danger because of a delay, or that any other extenuating circumstances existed"); *Williams v. Jones*, 291 Ga. App. 395, 398 (662 SE2d 195) (2008) (reversing a protective order to the extent it imposed conditions on the party seeking protection, where nothing put the petitioner on notice that a mutual protective order might be issued and she had no opportunity to prepare

---

[6] Clark testified that Wildes left the family home about two weeks before the August 17 hearing and had not returned. As far as the record shows, their last contact before the hearing was a Skype conversation not long before Clark filed her petition, during which they discussed getting Wildes's sons to school the following Monday morning.

a defense before appearing at the hearing on her petition).[7]

*Judgment reversed. Bethel and Gobeil, JJ., concur.*

---

[7] See *Cobb County Sch. Dist. v. Barker*, 271 Ga. 35, 37 (2) (518 SE2d 126) (1999) ("The principles of due process extend to every proceeding judicial or administrative or executive in its nature at which a party may be deprived of life, liberty, or property." Generally, due process is satisfied if a party has reasonable notice and an opportunity to be heard, and to present its claim or defense. What particular process is due in a proceeding depends on the nature of the proceeding and the character of the rights which may be affected by it. ) (citations and punctuation omitted); *Williams v. Jones*, 291 Ga. App. at 398 (The respondent to a petition for a family violence protective order is entitled to notice and an opportunity to prepare a defense and to be heard.).