168 Ga. App. 801 (1983)
310 S.E.2d 764
NORTH FULTON COMMUNITY HOSPITAL, INC.
v.
STATE HEALTH PLANNING & DEVELOPMENT AGENCY et al.
66337.
Court of Appeals of Georgia.
Decided November 9, 1983.
Mark A. Hall, Emmet J. Bondurant II, Robert W. Miller, William E. Hoffmann, Jr., for appellant.
Mark H. Cohen, Barry P. Allen, H. Perry Michael, Carol A. Cosgrove, Assistant Attorneys General, Lawrence H. Neville, H. Boyce Connell, Jr., Kim H. Roeder, Randall L. Hughes, Stanley S. Jones, Jr., Peter J. Anderson, Thomas J. Browning, H. Fred Gober, James P. Kelly, Jr., George Polatty, Jr., for appellees.
POPE, Judge.
This appeal is from the superior court's affirmance of a decision by the State Health Planning Review Board (Review Board) granting Certificates of Need for a 95-bed expansion to appellee Hospital Authority of Fulton County d/b/a Northside Hospital (Northside), and for construction of a new 175-bed hospital in Roswell, Georgia by appellee North Fulton Medical Center, Inc. (AMI). In its decision, the Review Board denied a Certificate of Need for construction of a 100-bed hospital in Roswell by appellant North Fulton Community Hospital, Inc. (Charter).
Title 31, Chapter 6 of the Official Code of Georgia Annotated (Code Ann. § 88-3301 et seq.) establishes a system for state health planning and development. In this system, before a hospital is built or expanded, a Certificate of Need must be obtained from the State Health Planning and Development Agency (SHPDA). See OCGA § 31-6-40 et seq. (Code Ann. § 88-3306 et seq.). The initial agency determination of whether to grant or deny a requested Certificate of Need rests with the SHPDA. An applicant, or a person aggrieved as defined in the Administrative Procedure Act, OCGA Ch. 50-13 (Code Ann. § 3A-101 et seq.), may appeal an adverse determination to a five-member panel of the Review Board. The Review Board is composed of citizens appointed by the Governor who are knowledgeable in health care, but who have no financial interest in any health care facility. The chairman of a five-member panel must be an attorney. The decision of the Review Board is considered the final agency decision; thereafter, judicial review is available in accordance with the Administrative Procedure Act. See OCGA § 31-6-47 (former Code Ann. § 88-3313).
In this case, between November of 1980 and February of 1981, several applications for Certificates of Need to build or expand *802 hospital facilities in the north Fulton County area were received by SHPDA. After the appropriate hearings, SHPDA denied all applications, save those for expansion at Northside Hospital and Kennestone Hospital. Several parties, including Charter and AMI appealed the SHPDA decision to the Review Board. Upon motion, the Review Board consolidated the several appeals into one hearing; through attrition by withdrawal and dismissal, only Northside, Charter and AMI remained as applicants for Certificates of Need before the Review Board at the conclusion of the hearing.
SHPDA has standing to be a party in appeals before the Review Board, see OCGA § 50-13-2 (Code Ann. § 3A-102) and Bd. of Pharmacy v. Bennett, 126 Ga. App. 307 (1) (190 SE2d 788) (1972); SHPDA was such a party to the consolidated appeal before the Review Board. Throughout the proceedings below, SHPDA was represented by the Attorney General through Barry P. Allen, Assistant Attorney General.
The appeals to the Review Board were filed in May and June of 1981. The hearing began on July 21, 1981. Sessions were scheduled intermittently through December 13, 1981 to accommodate the schedules of the five panel members, over 30 attorneys representing the several parties, and the approximately 70 witnesses called to testify. The record numbered in excess of 6,000 pages of transcript and some 300 exhibits. In the course of the protracted hearing, Chairman John A. Sherrill of the Review Board contacted members of the SHPDA staff and Assistant Attorney General Allen concerning logistical and procedural matters pertaining to the hearing.
After requesting and receiving from each party proposed findings of fact and conclusions of law, and after hearing final arguments, the Review Board concluded the hearing and closed the record on December 13, 1981. On January 6, 1982, in an open meeting, on the record, the Review Board announced its decision with regard to each applicant. This was done by voice vote and show of hands; each decision was unanimous. Chairman Sherrill announced that the findings of fact and conclusions of law would be issued by the Review Board on January 27, 1982.
Chairman Sherrill and an associate attorney in Chairman Sherrill's law firm, Mike McElroy, drafted proposed findings of fact and conclusions of law and circulated the draft to the other panel members. At Chairman Sherrill's request, and after checking with his superiors in the Attorney General's office and receiving approval, Assistant Attorney General Allen began assisting the Review Board on January 18, 1982 in the final preparation of its findings of fact and conclusions of law. The findings of fact and conclusions of law supporting the January 6, 1982 decision were issued on January 27, *803 1982.
Charter then petitioned the superior court for judicial review of the Review Board decision. Pursuant to OCGA § 50-13-19(g) (Code Ann. § 3A-120), Charter was permitted by the superior court to make discovery and present evidence regarding alleged ex parte contacts between Chairman Sherrill and Assistant Attorney General Allen.
After considering the deposition evidence of Chairman Sherrill, Mr. McElroy, and Mr. Allen, the interrogatory responses and documents produced in response to discovery requests, and after conducting a day-long hearing including testimony from Chairman Sherrill and Mr. Allen along with the record of the proceedings before the Review Board, the superior court affirmed the decision of the Review Board. Appellant Charter then sought and was granted this discretionary appeal.
1. In enumerations of error 2,3,4 and 16, Charter seeks to attack the decision of the administrative agency upon constitutional grounds. These arguments were first urged before the superior court and not before the agency. Thus, these constitutional challenges come too late to be considered by an appellate court. Sparks v. Caldwell, 244 Ga. 530 (261 SE2d 590) (1979); Dept. of Public Safety v. Foreman, 130 Ga. App. 71 (2) (202 SE2d 196) (1973). This is true even regarding the alleged irregularities in procedure before the agency, upon which the superior court heard evidence pursuant to OCGA § 50-13-19(g) (Code Ann. § 3A-120). "The authorization to the superior court set forth in Code Ann. § 3A-120(g) [OCGA § 50-13-19(g)] to hear evidence relating to alleged irregularities in procedure before the agency that are not shown in the record is an exception to the principle that review by the superior court shall be confined to the record but is not an exception to the principle stated in Code Ann. § 3A-120(c) [OCGA § 50-13-19(c)] requiring objections to agency decisions or orders to be urged in the first instance before the agency." Ga. Real Estate Comm. v. Burnette, 243 Ga. 516 (1) (255 SE2d 38) (1979).
The court is aware that Charter, in a letter to Chairman Sherrill dated January 26, 1982, objected to the alleged ex parte contacts. The letter further stated: "As of the date of this letter, we do not know the extent and nature of these violations of our client's rights under the United States and Georgia Constitutions. . . ." This letter preceded Charter's appeal of the agency decision in superior court. However, the record reflects no other objection before the agency. The January 26, 1982 letter is not sufficiently specific in its objection to raise the constitutional issues now sought to be heard in this court. See Taylor v. Moultrie Tobacco Sales Bd., 227 Ga. 384 (180 SE2d 737) (1971); Elinburg v. State, 227 Ga. 246 (1) (179 SE2d 926) (1971); Persons v. *804 Lea, 207 Ga. 384 (2) (61 SE2d 832) (1950). Therefore, Charter is deemed to have waived its constitutional arguments.
2. In enumerations 12, 13 and 14 Charter contends the superior court erred in holding that the Review Board was statutorily authorized to base its decision not only upon the specific considerations set out in OCGA § 31-6-45 (former Code Ann. § 88-3316), but also upon factors specified in SHPDA rules. OCGA § 31-6-47(b) (former Code Ann. § 88-3318) states in part: "The five-member panel shall base its decision upon the considerations set forth in Code Section 31-6-45 (former Code Ann. § 88-3316)." OCGA § 31-6-43 (former Code Ann. § 88-3313) reads in pertinent part: ". . . the state agency shall exercise the following powers and duties with respect to certificates of need: (1) Adopt, promulgate and implement rules and procedures sufficient to administer the certificate of need program; . . . (4) Establish standards, criteria, or plans required to carry out the purposes and provisions of this article; . . . (7) Develop procedures for appeals of decisions of the state agency. . . ."
SHPDA Rule 272-2-.07(2) reads in pertinent part: "The standards listed below will be used in applying the considerations set forth in Rule 272-2-.07(1). These standards shall not be used in place of said considerations, but shall be used only to provide the specificity necessary to interpret and implement said considerations on a fair and consistent basis." The considerations of Rule 272-2-.07(1) are essentially those considerations set out in OCGA § 31-6-45 (former Code Ann. § 88-3316).
Thus, the superior court was correct in its holding that the Review Board could use not only the considerations listed in OCGA § 31-6-45 (former Code Ann. § 88-3316), but also those SHPDA standards and criteria interpreting those standards. Implicit in the interlocking parts of the statutory scheme is the legislative intent that the Review Board use the considerations as a base, filling the interstices of the statutory considerations with the agency's rules interpreting and implementing them. What was implicit in the statutory scheme has now been made explicit. Ga. L.1983, p. 1566 § 1 (d), codified as OCGA § 31-6-44 (d) (Code Ann. § 88-3310) (1983 Supp.) now reads: "The issue for decision by the panel shall be whether . . . in the panel's judgment the application is consistent with the considerations as set forth in Code Section 31-6-42 [Code Ann. § 88-3308] [considerations formerly codified in OCGA § 31-6-45] [former Code Ann. § 88-3316] and the planning agency's rules, as the panel deems such considerations and rules applicable to review of the project." (Emphasis supplied.) We therefore find no merit in enumerations 12, 13 and 14.
3. Charter also contends that "substantial rights" due it "have *805 been prejudiced" within the meaning of OCGA § 31-6-47 (former Code Ann. § 88-3318). The argument is that Assistant Attorney General Allen acted in an "undisclosed" dual role as attorney for SHPDA and the Review Board. In addition, Charter alleges improper ex parte contacts between Mr. Allen and Chairman Sherrill of the Review Board.
At the behest of appellant the superior court invoked the provisions of OCGA § 50-13-19 (g) (Code Ann. § 3A-120), which allows the superior court to receive evidence regarding alleged irregularities in procedure before the agency. As noted in Division 1, this provision is an exception to the rule that the superior court is confined to the record on an appeal from an administrative agency. In deciding whether or not procedural irregularities occurred, and, if so, whether they were prejudicial to any party's rights, the superior court renders judgment without a jury. Reviewing the superior court's decision, this court is bound by the "any evidence" rule. OCGA § 9-11-52(a) (Code Ann. § 81A-152); Allen v. Cobb Heating &c. Co., 158 Ga. App. 209, 210 (279 SE2d 505) (1981). Thus, an appellate court will not disturb fact findings of a trial court if there is any evidence to sustain them. Feltham v. Cofer, 149 Ga. App. 379 (2) (254 SE2d 499) (1979). We deal first with the question of duality of function, and, secondly, with the alleged ex parte contacts.
The Georgia Constitution of 1976, Art. VI, Sec. X, Par. II (Code Ann. § 2-3902) (now Ga. Const. 1983, Art. V, Sec. III, Par. IV (Code Ann. § 2-2504)), commands the Attorney General of Georgia, to ". . . act as the legal advisor of the Executive Department . . . and to perform such other services as shall be required of him by law." OCGA § 45-15-3 (Code Ann. § 40-1602) repeats and elaborates upon the constitutional duties. OCGA § 45-15-30 (Code Ann. § 40-1612) creates the Department of Law with the Attorney General at its head. OCGA § 45-15-34 (Code Ann. § 40-1614) vests the Department of Law with "complete and exclusive authority and jurisdiction in all matters of law relating to the executive branch of the government and every department, office, institution, commission, committee, board, and other agency thereof." There is no question that both SHPDA and the Review Board come within the constitutional and statutory commands set out above. In addition, the statutory scheme in effect during the time of these hearings closely links SHPDA and the Review Board. See OCGA Ch. 31-6 (Code Ann. § 88-3301 et seq.), particularly §§ 31-6-26 (7) (former Code Ann. § 88-3305), 31-6-42 (former Code Ann. § 88-3312), 31-6-43 (former Code Ann. § 88-3313), and 31-6-47 (former Code Ann. § 88-3318).[1] The record below *806 indicates that this close link between SHPDA and the Review Board was customary and was acknowledged by Chairman Sherrill to the parties involved in these hearings at a prehearing conference on July 16, 1981. Chairman Sherrill told counsel for the parties: ".. . the SHPDA staff of course is my Board staff. We do not have a separate staff." (Emphasis supplied.) Near the beginning of the hearings, one of the parties, Hospital Corporation of America, challenged actions of the Review Board, first in superior court, and then in federal court. Assistant Attorney General Allen, while continuing to represent SHPDA in the certificate-of-need hearings before the Review Board, also represented the Review Board in both those proceedings.
Charter's argument that Assistant Attorney General Allen's dual role was "undisclosed" is thus unpersuasive. OCGA § 1-3-6 (Code Ann. § 102-105) charges Charter, as well as all inhabitants of the state, with knowledge of the law that the Attorney General, through the Department of Law, represents all state entities. The record discloses that Charter knew or should have known that Mr. Allen was fulfilling the dual role constitutionally and statutorily mandated to the Attorney General's office in connection with SHPDA and the Review Board.
Charter argues that such dual representation is per se prejudicial. This court rejected that approach in Schaffer v. State Bd. of Veterinary Medicine, 143 Ga. App. 68, 71 (237 SE2d 510) (1977). Instead, the court opted to review cases of dual representation in administrative hearings on a case-by-case basis, and to "closely scrutinize" cases in which a "prosecutor is also acting as the legal advisor for the hearing board." We see no reason to alter this approach.
The hearing before the Review Board was in the nature of a civil action, with multiple parties represented. Mr. Allen was but one of several counsel. The question to be determined in each case is whether the hearing was fair. The court in Schaffer noted that "administrative disciplinary hearings are not fitted with all the trappings of criminal procedure. . . ." Schaffer, supra at 71. Nor are administrative appeals fitted with all the trappings of civil procedure. However, each party must be afforded a fair opportunity to present its case. The holding in Schaffer thus requires the court to examine closely the manner in which the dual representation mandated by law is carried out. No hard and fast test may be set to determine when dual representation is harmful and when it is not; the term "closely scrutinize" puts a heavy burden upon the party *807 seeking to uphold the dual representation. The court will examine all facets of the hearing including, but not limited to, the notice provided, the length of the hearing, the manner in which the hearing was conducted, the evidentiary and legal rulings of the presiding officer, and the conduct of the attorney burdened with dual representation in relation to all other facts, to determine whether the dual representation, in fact, deprived any part of a fair hearing.
In Schaffer, the court found that the hearing board was "substantially reliant" upon the prosecutor for legal advice, including rulings on evidentiary matters. The prosecutor "uncompromisingly construed legal points strongly against the appellant's contentions"; his attitude toward appellant was characterized as "sometimes venomous." Schaffer, supra at 71. Obviously, in Schaffer the hearing board exercised little or no independent judgment and relied instead upon the advice of an advocate apparently bent upon winning at any price.
By contrast, the record before us shows no such conduct. From the outset of the hearing, Chairman Sherrill established a pattern of seeking the views of all counsel, either by brief or by conversation with counsel, on issues affecting the course of the proceedings. Only after receiving these views did Chairman Sherrill rule. The many rulings of Chairman Sherrill during the course of the hearing show no pattern of deference to Mr. Allen or his client. As in most cases, each advocate won some and lost some. Chairman Sherrill has testified that he allowed each party to present its case as fully as possible, and that he was reluctant (apparently to the dismay of some of the panel members) to rule that a witness or evidence was cumulative or irrelevant. The sheer volume of the record before us (some 6000 pages, 70 witnesses and 300 exhibits) bears this out. Indeed, Charter has not argued that it was prevented in any way from fully presenting its case to the Review Board. The record thus shows that the manner of the dual representation during the course of the hearing did not taint the opportunity of each party, including Charter, to present its case in full before the Review Board.
While not specifically alleging that it was deprived of the opportunity to be prepared and to be heard as a result of the dual representation, Charter does argue that there were ex parte contacts, and that these contacts between Mr. Allen and Chairman Sherrill deprived Charter of the right to have its case fairly considered by the Review Board. Though it alleges many instances, Charter's concerns about ex parte contacts between Mr. Allen and Chairman Sherrill may be grouped as follows: (1) when the Review Board was determining whether the City of Roswell and the North Fulton Chamber of Commerce had standing to participate in the hearing; (2) *808 when the Review Board was asked to consider a legislative resolution; (3) when the Review Board was determining the manner in which to take its vote; and (4) after the vote was taken and the decision was announced, and before the written findings of fact and conclusions of law were published. Therefore, we must consider a question not reached by the court in Schaffer. Given the fact of dual representation in an administrative hearing, are ex parte contacts between the attorney representing the separate state interests and any member of the administrative body so represented ever permitted, and if so, to what degree and under what restrictions?
Disciplinary Rule 7-110(b) of the Code of Professional Responsibility (Code Ann. Title 9 Appendix) declares: "In an adversary proceeding, a lawyer shall not communicate . . . as to the merits of the cause with the judge or an official before whom the proceeding is pending, except:. . . (4) as otherwise authorized by law." Rules and Regulations of the State Bar of Georgia, Code of Professional Responsibility, 241 Ga. 643, 715 (1978). Ethical Consideration 7-11 of the same Code (Code Ann. Title 9 Appendix) states in pertinent part: "The responsibilities of a lawyer may vary according to . . . the obligation of a public officer, or the nature of a particular proceeding." Code of Professional Responsibility, 241 Ga. 643, 700. SHPDA Rule 272-2-.08(3)(c) reads: "No applicant or other party on behalf of or in opposition to an applicant shall contact, outside of a duly constituted appeal hearing, any member or members of the hearing panel to discuss any aspect of a project or an appeal."
The rules set out above contemplate situations such as the one now before us. Obviously, if an advocate is lawfully mandated to represent dual interests in an administrative hearing, some ex parte contact is inherent in the relationship. Therefore, if an advocate has dual responsibilities of representation during an administrative hearing put upon him by law, and there is no administrative agency rule specifically prohibiting any ex parte contact, then ex parte contact to some degree is permitted. However, this does not give carte blanche to the advocate having dual representation. At this point, the analysis reverts to that used by the court in Schaffer: one must examine both the manner and the quality of the ex parte contacts to determine if such contacts undermined the basic fairness of the proceeding. An advocate in such a position has a special duty analogous to that of a public prosecutor. His responsibility is not merely to prevail, but to seek a just and equitable result. See Ethical Consideration 7-13, Code of Professional Responsibility (Code Ann. Title 9 Appendix), 241 Ga. 643, 700. He must be aware of his special position and not use it to influence the body with which he has this *809 special relationship as to the merits of the cause before it. So should he endeavor to see that any advice given by him to the administrative body is even-handed with due regard for the procedural rights of all parties.
In examining the record in the case before us, we do not read SHPDA Rule 272-2-.08(3)(c), set out above, to be an absolute prohibition of ex parte contacts between the Review Board and parties before it. Rather, the rule prohibits such contacts between Review Board members and members of specific classes of parties before the Review Board, i.e., applicants or parties on behalf of or in opposition to an applicant. The contacts between Chairman Sherrill and Mr. Allen did not violate the agency rule as such contracts were not made by an applicant or a party on behalf of or in opposition to an applicant. The contacts complained of here were not made to advance or deter the cause of any of the applicants before the Review Board. The record now before us, including the testimony of Chairman Sherrill and Mr. Allen, and the documents produced during the discovery made in the superior court, shows no conduct during any of the alleged contacts which would have undermined the basic fairness of the proceedings. In each of the areas complained of, all parties were permitted to extensively brief the question involved. The record does not show Mr. Allen used his role of dual representation to prevail upon the hearing board in any manner. The record shows that Mr. Allen communicated with Chairman Sherrill only when specifically requested to do so by Chairman Sherrill, and that during such contacts, each man refrained from discussing the merits. We realize that the testimony of Chairman Sherrill and Mr. Allen in this regard may be seen as self-serving. However, each is a respected attorney licensed to practice in this state, and the court has no reason to doubt that testimony, particularly in light of the pattern of the proceedings before the Review Board as shown in the record. The hearing was conducted with a view toward inclusion of all relevant evidence; with due regard for the schedules of parties, counsel, and witnesses so that the hearing could end as expeditiously as possible without precluding any party from presenting its full case; and the views of all parties were heard before rulings were made. After a thorough review of the record, we are satisfied that the contacts complained of in regard to the standing question, the legal effect of the legislative resolution, and the manner in which the vote was taken did not undermine the fairness of the overall proceedings. Each question was resolved in a manner in which the resolution affected all parties equally. We find no evidence that Mr. Allen's advice was prejudicial to the fair conduct of the hearing, or that such advice affected the full consideration of Charter's case before the *810 Review Board.
We must take special note of Charter's complaint regarding ex parte contact after the vote on the projects was taken and the decision announced and before the findings of fact and conclusions of law were published. Even in full adversarial proceedings in the courts of the land, the practice persists of allowing a prevailing party's counsel to aid the court, as a matter of expediency, in drafting findings of fact and conclusions of law to support a decision already reached and announced. While tolerated, such a practice is not favored. However, the Supreme Court of the United States has held that even in cases where the judge adopts the findings of an advocate verbatim, such findings, "though not the product of the workings of the . . . judge's mind, are formally his; they are not to be rejected out-of-hand, and they will stand if supported by evidence." United States v. El Paso Natural Gas Co., 376 U. S. 651, 656 (84 SC 1044, 12 LE2d 12) (1964). "It is the judgment rendered and its legal effect, and not the reasons and arguments in support thereof expressed by the judge in his order or judgment, which constitutes the adjudication." Matthews v. Green, 28 Ga. App. 190 (1) (110 SE 507) (1922).
The record shows that the contacts between Mr. Allen and Chairman Sherrill regarding the findings of fact and the conclusions of law came nearly two weeks after the decision of the Review Board had been reached. An initial draft of the findings had been circulated to the Review Board members before Chairman Sherrill asked Mr. Allen to assist in putting in citations to the record and polishing the findings which Chairman Sherill regarded as substantially complete. We find no evidence in the record that Mr. Allen added to or diminished the substance of the findings.
Thus, after closely scrutinizing the record before us, including the evidence taken in the superior court, we find there is evidence to support the superior court's decision that Charter's rights were not prejudiced and that Charter was accorded not only a fair opportunity to be heard, but also that the evidence presented was fairly considered by the Review Board in reaching its decision.
4. In the remaining enumerations of error, Charter contends there is no evidence in the record to support the superior court's affirmance of the Review Board decision. We do not agree. Under the "any evidence" standard applicable in the case at bar, we find evidence in the record to support the decision of the superior court and the Review Board. OCGA § 31-6-47 (c) (former Code Ann. § 88-3318); Dept. of Human Resources v. Montgomery, 248 Ga. 465 (1) (284 SE2d 263) (1981). Charter vociferously argues that the Review Board based its decision on one expert's conclusory three word statement. A full and fair reading of the approximately 6000-page *811 record indicates that the Review Board assimilated and weighed a considerable number of technical analyses and expert opinions, each differing in methodology and conclusion. There clearly is evidence to support the Review Board decision and it is not our function to weigh such evidence or judge the credibility of competing expert witnesses.
Judgment affirmed. Quillian, P. J., and Sognier, J., concur.
NOTES
[1] The legislature has now seen fit to revise this scheme and to widen substantially the distance between SHPDA and the Review Board. See Ga. L. 1983, pp. 1566, 1583, codified as OCGA § 31-6-44 (Code Ann. § 88-3310) (1983 Supp.).